## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## IN EAST ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*,<br>KARL JEFFERSON and DIANA<br>JEFFERSON;<br>THE STATE OF ILLINOIS *ex rel.* KARL<br>JEFFERSON and DIANA JEFFERSON,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED IRONWORKERS, INC.; KIM<br>RASNICK; BUMPY'S STEEL<br>ERECTION, LLC; D&K WELDING<br>SERVICES, INC.; and DORRIE HARRIS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____<br><br>**TO BE FILED IN CAMERA<br>UNDER SEAL**<br><br>**Jury Trial Demanded** |

## COMPLAINT

COME NOW plaintiffs/relators Karl Jefferson and Diana Jefferson ("Relators" or "Jefferson"), pursuant to the *qui tam* provisions of the federal False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA") and the Illinois False Claims Act, 740 ILCS 175, *et seq.* (the "Illinois FCA") and file this Complaint against United Ironworkers, Inc., Kim Rasnick, Bumpy's Steel Erection, LLC, D&K Welding Services, Inc. and Dorrie Harris (collectively "Defendants"). In support thereof, Karl Jefferson and Diana Jefferson allege as follows:

## BACKGROUND

1.     Karl Jefferson and Diana Jefferson bring this *qui tam* action to remedy the Defendants' various schemes to defraud the United States Department of Transportation and the Illinois Department of Transportation through the "Disadvantaged Business Enterprise" ("DBE")

program.

2.      Defendant Kim Rasnick is the principal owner of Defendant United Ironworkers, Inc. ("United Ironworkers"). Neither Defendant Rasnick nor Defendant United Ironworkers is an eligible participant in the DBE program.  Rasnick nonetheless devised an elaborate, unlawful scheme involving two certified DBEs which, in reality, were managed by Rasnick and were dependent upon him and his company, United Ironworkers, to perform work on the relevant construction projects.  The fundamental purpose of the fraudulent scheme was to enrich Rasnick in contravention of the regulations and purposes of the DBE program.

3.      The Relators Karl Jefferson and Diana Jefferson are residents of Wood River, Illinois.

4.      The Relators have extensive knowledge of the bidding process and the requirements of construction contractors to perform steel and rebar work on road and bridge projects in the St. Louis area, including in the states of Missouri and Illinois.  Utilizing such knowledge, the Relators have discovered the fraudulent actions and schemes of the Defendants discussed herein.

5.      Defendant United Ironworkers bids on and performs work on various types of construction projects, including steel and rebar work on road and bridge projects. United Ironworkers is one of the largest and most well-established steel and rebar construction contractors in the Midwest of the United States.

6.      Defendant Kim Rasnick is the principal owner and operator of Defendant United Ironworkers. Rasnick is a white male.

7.      Defendant Bumpy's Steel Erection, LLC ("Bumpy's") ostensibly bid on, and ostensibly performs work on, various types of construction projects, including steel and rebar work

on road and bridge projects.  Bumpy's principal office is in East St. Louis, Missouri.

8.      Bumpy's is ostensibly owned and operated by Ashanti Mitchell and Dannell Wise, respectively the daughter and son of Defendant Dorrie Harris.  Mitchell is an African-American female. Wise is an African-American male.

9.      On August 19, 2013, a fictitious name registration was filed with the Missouri Secretary of State on behalf of the business name "Bumpy-United Joint Venture," which is listed as being jointly owned by Defendants United Ironworkers and Bumpy's.  Bumpy-United Joint Venture's registered business address is the same address as United Ironworkers.

10.     In reality, neither Ms. Mitchell nor Mr. Wise independently manage the business affairs of Bumpy's; Defendant Kim Rasnick manages the business affairs of Bumpy's.

11.     Defendant D&K Welding Services, Inc. ("D&K") ostensibly bids on, and ostensibly performs work on, various types of construction projects, including steel and rebar work on road and bridge projects.  D&K's principal office is in St. Louis, Missouri.

12.     D&K also covertly maintains an office in Steeleville, Illinois.  From the D&K office in Steeleville, Illinois, Jamie Rathert performs work as an estimator, putting together construction project bid packages for D&K.

13.     Rathert performs his estimator work for D&K at the express direction of Defendant Kim Rasnick.

14.     D&K is ostensibly owned and operated by Defendant Dorrie Harris.

15.     Defendant Dorrie Harris is an African-American woman and a former rank and file ironworker.

16.     In reality, Dorrie Harris does not independently manage the business affairs of D&K; rather, she works at the direction of Defendant Kim Rasnick, who manages the business

affairs of D&K.

17.    In its 2016 amended annual report to the Missouri Secretary of State, D&K listed Dorrie Harris as its president and secretary, and listed Defendant Kim Rasnick as its vice president.

18.    In reality, both Bumpy's and D&K are sham concoctions of Defendant United Ironworkers and its principal owner Defendant Kim Rasnick to defraud the "Disadvantaged Business Enterprise" programs of the United States Department of Transportation ("U.S. DOT") and the Illinois Department of Transportation ("Illinois DOT").

19.    Defendants Rasnick and United Ironworkers [1] fraudulently utilize Defendants Bumpy's and D&K as "fronts" and "pass-throughs" whereby Defendant United Ironworkers, an extremely large and well-established non-minority contractor, operating through its white male principal owner, Defendant Rasnick, actually provides and/or arranges for the bids, the subcontracts, the employees, the equipment and expertise to perform work on contracts with the U.S. DOT and the Illinois DOT pursuant to false statements that Bumpy's or D&K, respectively, would provide such services and equipment on the projects as small, minority and woman-owned companies.

20.    On the majority of the construction projects on which Defendants have perpetuated fraud against the United States and/or the State of Illinois, either Bumpy's or D&K have operated as "fronts" for United Ironworkers. That is, on such projects, United Ironworkers ostensibly provided no services on the projects as a contractor, subcontractor or otherwise. On such projects,

---

[1]    In 2015, Defendant Kim Rasnick formed and registered another Illinois corporation, United Rebar, Inc. ("United Rebar"). Like Defendant United Ironworkers, United Rebar operates as a construction industry contractor. United Rebar operates out of the same facilities as United Ironworkers, utilizing United Ironworkers' management and rank and file employees.

either Bumpy's or D&K were fraudulently utilized to satisfy a target percentage of a "set aside" of the subcontracts on the projects for "small," woman or minority owned subcontractors.   In reality, United Ironworkers, which is neither "small" nor woman or minority owned under the relevant procurement rules and regulations, through its managers, its rank and file employees, and its equipment actually or effectively performed the work on the projects. Defendant Rasnick, as the principal owner of United Ironworkers, ultimately and fraudulently enjoyed the bulk of the profits from such subcontracts to Bumpy's and D&K.

21.     On certain other construction projects, Defendants have perpetuated fraud against the United States and/or the State of Illinois by operating either Bumpy's or D&K as "pass-throughs" for United Ironworkers.   That is, on such projects, United Ironworkers served as the prime contractor obligated by the U.S. DOT and/or the Illinois DOT to make reasonable efforts to subcontract a designated percentage of work on the project to "small" woman or minority owned subcontractors.   On such projects, United Ironworkers ostensibly subcontracted certain work thereon to either Bumpy's or D&K. In reality, United Ironworkers – which is neither "small" nor woman- or minority-owned under the relevant procurement rules and regulations – through its managers, its rank and file employees, and its equipment actually or effectively performed the work on those subcontracts.   Defendant Rasnick, as the principal owner of United Ironworkers, ultimately and fraudulently enjoyed the bulk of the profits from such subcontracts.

22.     The Relators have spent considerable time and energy researching and investigating the relationships between Defendant Rasnick's businesses and assets thereto as they relate to the operations of Bumpy's and D&K, two construction contracting businesses supposedly owned and operated independently from Mr. Rasnick, United Ironworkers, and the employees and assets thereto.

23.     The Relators have learned through their research and investigation that the Defendants, particularly Rasnick and United Ironworkers, are using an elaborate fraud to funnel millions of dollars of government-provided construction funds through the sham companies Bumpy's and D&K, which Rasnick and United Ironworkers effectively control, to collect monies earmarked by the U.S. DOT and the Illinois DOT for small woman and minority-owned companies.

## JURISDICTION AND VENUE

24.     The Court has subject matter jurisdiction over this action under the federal False Claims Act pursuant to 28 U.S.C. §§ 1331, 1367 and 31 U.S.C. § 3730.  The Court has pendent jurisdiction over Relators' claims under the Illinois False Claims Act.

25.     Venue is proper pursuant to 31 U.S.C. § 3732. All Defendants transact business in this judicial district and the claims are based on events that occurred, in part, in this judicial district.

## PARTIES

26.     Defendant United Ironworkers is an Illinois corporation with its principal office in Steeleville, Illinois.  United Ironworkers is one of the largest and most well-established steel and rebar construction contractors in the Midwest of the United States with annual gross revenues of over fifty million dollars.

27.     Defendant Kim Rasnick is the principal owner and principal officer of Defendant United Ironworkers.

28.     Defendant Bumpy's is an Illinois limited liability company with its principal office in East St. Louis, Missouri. Bumpy's is ostensibly owned and operated by Ashanti Mitchell and Dannell Wise, respectively the daughter and son of Defendant Dorrie Harris.

29.     D&K is a Missouri corporation with its principal office located in St. Louis,

6

Missouri. D&K is ostensibly owned and operated by Defendant Dorrie Harris.

30.     Defendant Dorrie Harris is a former rank and file ironworker, and the president and secretary of D&K.

31.     Relator Diana Jefferson is a resident of Wood River, Illinois.

32.     Relator Karl Jefferson is a resident of Wood River, Illinois.

33.     Utilizing their extensive knowledge of the bidding process and the requirements of construction contractors to perform steel and rebar work on road and bridge projects, the Relators Jefferson have discovered the fraudulent actions and schemes of the Defendants discussed herein.

## The Disadvantaged Business Enterprise Program

34.     The U.S. DOT established DBE requirements in 1980 that required state agencies, such as the Illinois DOT, to adopt requirements for the benefit of DBEs as a condition of receiving federal funds.

35.     The DBE program operates to promote diversity in the construction industry by requiring prime contractors to make reasonable efforts to allocate, typically through subcontracts, part of their contract awards to businesses owned by minorities and persons from other traditionally disadvantaged groups.  These percentage-targeted allocations of subcontracts are intended to ameliorate the historical and current effects of race and gender discrimination by prime contractors and to foster the growth of qualified DBEs by allowing them opportunities to participate in large government-funded contracts.

36.     The DBE program has been subject to abuse. Unscrupulous contractors use "front" companies or "pass-through" companies, as described above, whereby a non-DBE, such as United Ironworkers, effectively performs the work on the subcontract and enjoys the bulk of the resulting profits.  This impetus to cheat stems from the fact that the DBE program can increase the

government's expense on contracts because DBEs are, by definition, relatively smaller companies that cannot take advantage of certain economies of scale compared to their more well-established, larger competitors.  Nonetheless, the government assumes such increased expense, as a matter of policy, will foster DBE growth.  Unscrupulous contractors – such as United Ironworkers – abuse the DBE program to fraudulently capture government outlays, including the premiums paid by the government under the DBE program.  The unscrupulous contractors, such as United Ironworkers, thereby defeat the fundamental purpose of the DBE program by taking work away from otherwise truly qualified and truly independent DBEs.

37.     A principal requirement for a company to qualify as a DBE is that the company must be "small" in size.  Whether a company qualifies as a "small" business varies by industry under the North American Industry Classification System ("NAICS").  The NAICS utilized a five-digit code to identify thousands of specific industries.  Depending on the industry, a company qualifies as "small" based on one of two factors: 1) number of employees; or 2) annual revenue. *See* 49 C.F.R. § 26.65 (citing 13 C.F.R. part 121). At no time, and in none of the DOT projects for which Bumpy's or D&K operated as either a front or a pass-through for United Ironworkers, did United Ironworkers qualify as a "small" business for purposes of DBE eligibility.

38.     The prime contractor awarded a DOT project is prohibited from claiming DBE credit for subcontracted work unless the work is actually performed by the DBE's own workforce. Where, in reality, either the prime contractor or another non-DBE effectively performs the work, the prime contractor's certifications that a DBE performed such work are false and fraudulent.

39.     Also, all payments counted towards DBE participation must have actually been paid to the DBE. The Defendants violated this requirement. Most of the monies paid to either Bumpy's or D&K merely circulated through either Bumpy's or D&K, with Defendant Dorrie

Harris keeping a small portion thereof as a fee for providing the fronts or pass-throughs. The bulk of the monies paid to Bumpy's or D&K for DBE projects ultimately redounded to the personal enrichment of Defendant Kim Rasnick.

40.     Because Defendant United Ironworkers served as the prime contractor under DOT contracts and falsely certified that either Bumpy's or D&K performed the relevant work (i.e. "pass-through" fraud as described herein), United Ironworkers is liable under the False Claims Act for such false statements.  Defendants Bumpy's, D&K, Mr. Rasnick, and Ms. Harris are also liable for substantially causing such certifications to be false.

41.     As to DOT contracts where Defendant United Ironworkers was not a signatory contractor or subcontractor, but the relevant prime contractors wittingly or unwittingly falsely certified that either Bumpy's or D&K performed the relevant work (i.e. "front" fraud as described herein), United Ironworkers is liable under the False Claims Act for causing such false statements. Defendants Bumpy's, D&K, Rasnick, and Harris are also liable for substantially causing such certifications to be false.

### The DBE Fraud

42.     All of the construction contracts discussed herein were funded, at least in part, by the U.S. DOT.  All of the construction contracts discussed herein were subject to U.S. DOT rules set out in 49 C.F.R. § 26.55 regarding DBE usage.  These rules were incorporated into the bids of, and final contracts awarded to, the respective prime contractors on the projects.

43.     The U.S. DOT rules and regulations regarding DBE usage are designed to prevent the prime contractor's usage of "fronts" and/or "pass-throughs" to satisfy the DBE requirements.

44.     In order to qualify as a DBE, the DBE rules and regulations of the U.S. DOT require that the DBE must perform a "commercially useful function."  The DBE cannot serve as

a shell entity for either the prime contractor or a non-signatory contractor who would not otherwise qualify for DBE status.  The DBE must actually perform, supervise, and manage the work allocated to it pursuant to the subcontract.  The DBE must determine the quantities and qualities of the materials needed for the work, negotiate for its own supplies and materials, and install the materials itself.  A DBE does not perform a commercially useful function if its role is limited to that of an extra participant in the transaction negotiated by the prime contractor with the government (i.e. a pass-through) or a transaction that is, in effect, a transaction between the prime contractor and, unwittingly or knowingly to the prime contractor, a non-signatory contractor working behind the scenes as to the DBE (i.e., a front).  The minority and/or female person identified as the owner of the company for purposes of its designation as a DBE must actually manage both the business and the day-to-day affairs of the DBE.

45.    Only a truly independent business may operate as a DBE.  "An independent business is one the viability of which is not dependent on its relationship with another firm or firms." 49 C.F.R. § 26.71(b).  Determining and maintaining such independence requires scrutiny of "relationships with non-DBE firms, in such areas as personnel, facilities, equipment, financial and/or bonding support, and other resources."  49 C.F.R. § 26.71(b)(1).

46.    As to the construction projects discussed herein, neither Bumpy's nor D&K performed a "commercially useful function" under the governing rules for DBE status.

47.    For example, neither Bumpy's nor D&K employs estimators capable of putting together bid packages to obtain work on the DOT projects described herein.  Estimators employed by Defendant United Ironworkers put together the bid packages of Bumpy's or D&K in order for Bumpy's or D&K to be awarded the relevant subcontracts.  Where Defendant United Ironworkers is not the prime contractor from whom Bumpy's or D&K has successfully bid for a subcontract,

the prime contractor negotiates the terms of the ensuing written subcontract exclusively, or virtually exclusively, with Defendant Rasnick and/or other management representatives of United Ironworkers at the direction of Defendant Rasnick.

48.     In furtherance of this fraudulent scheme, management representatives of United Ironworkers negotiate with the suppliers of the materials to be installed on the DOT projects where either Bumpy's or D&K were awarded subcontracts; afterwards, Bumpy's or D&K issues the purchase orders for materials in volumes and at prices that were negotiated by management representatives of United Ironworkers.

49.     As to the necessary trucks to haul equipment to and from the projects, Bumpy's and D&K sign commercially unreasonable truck purchase agreements and/or commercially unreasonable truck leases with United Auto Sales, Inc. d/b/a Iron Ford ("United Auto"), an Illinois corporation registered since 2011 which is owned and controlled by Defendant Kim Rasnick. Neither Bumpy's nor D&K maintain sufficient capital reserves or insurance that would allow them to obtain trucks from United Auto via arms-length transactions, and yet Bumpy's and/or D&K possess a fleet of expensive vehicles purchased or leased from United Auto. By funneling DBE money through Bumpy's and/or D&K to United Auto, the Defendants' actions have enriched the owner of United Auto, Defendant Rasnick.

50.     In effect, United Ironworkers – rather than Bumpy's or D&K – performs the work on the relevant DOT projects for which Bumpy's or D&K were purportedly hired.  Skilled and experienced rank and file ironworker employees transfer seamlessly between United Ironworkers and either Bumpy's or D&K to perform work for Bumpy's or D&K on DOT projects.

51.     Neither Bumpy's nor D&K engage in the established industry practice of utilizing the hiring hall of the relevant local unions affiliated with the International Association of Bridge,

Structural, Ornamental and Reinforcing Ironworkers to obtain a ready pool of skilled Ironworkers to staff the project.  Instead, Defendant United Ironworkers simply transfers the required number of skilled experienced ironworkers to either Bumpy's or D&K.  Upon their completion of their work on the project for either Bumpy's or D&K, those skilled experienced ironworkers typically do not report to the relevant local union to be placed on the "out of work list" for availability to work for various signatory contractors through the local union's hiring hall; rather, those ironworker employees typically and routinely complete the circle between either Bumpy's or D&K by returning directly to work for Defendant United Ironworkers.

52.     Defendant Rasnick effectively performed virtually all hiring of personnel and dispatching of personnel for the relevant DOT projects on behalf of Bumpy's from about 2010 until at least 2016.  Since about 2016, Defendant Rasnick has effectively performed virtually all hiring of personnel and dispatching of personnel for the relevant DOT projects on behalf of D&K.  To the extent that Defendant Rasnick did not personally perform the dispatching of ironworker employees to the relevant DOT projects pursuant to subcontracts awarded to either Bumpy's or D&K, Rasnick delegated such dispatching duties to Field Superintendents employed by United Ironworkers, such as Keith Counts or Jason Dagner.

53.     More generally, employees, equipment and trucks move back and forth, on an as-needed, *ad hoc* basis, between United Ironworkers and Bumpy's and between United Ironworkers and D&K.[2]

---

[2]     As explained in footnote 1 above, in 2015 Defendant Rasnick established another construction industry contracting company, United Rebar.  As the owner of both United Ironworkers and United Rebar, Rasnick does not operate those two companies in a manner that properly observes their respective distinct corporate forms.  Nonetheless, to the extent that United

54.     Defendants have perpetuated DBE fraud in connection with the construction of a new Mississippi River bridge where Missouri Route 47 connects Franklin and Warren Counties near Washington, Missouri.  Although the project is for a bridge that is part of a Missouri state highway, the project includes appropriations of $45.4 million in federal funds and $10 million in TIGER grant funds.  Alberici Constructors, Inc., based in St. Louis, Missouri, serves as the general contractor on that project.  Work on that project began in 2016.  As part of Alberici's efforts to meet its goal to subcontract 12 percent of the work on that project to DBEs, Bumpy's and/or D&K is ostensibly serving as a subcontractor on that project.[3]  As described herein, in reality, Bumpy's and/or D&K are operating as a front for Defendants United Ironworkers and/or Rasnick to abuse the DBE program and fraudulently reap profits from that project.  In fact, two management representatives of Alberici, Craig Schmidt and Matthew Walters, acknowledged to Relator Karl Jefferson that Defendant Rasnick made the sales pitch to Alberici regarding Bumpy's and/or D&K's ability to meet Alberici's requirements for Bumpy's and/or D &K to perform the subcontract.

55.     Another DOT project in which Defendants have perpetuated DBE fraud is the rehabilitation of the William "Bill" Clay, Sr. Bridge, commonly known as the Poplar Street Bridge where I-64 and I-55 connect St. Louis, Missouri and East St. Louis, Illinois.  The project is funded

---

Ironworkers and United Rebar are in facts separate corporate entities, the *ad hoc* movement of employees, equipment and trucks between United Ironworkers and Bumpy's or D&K also takes places at times between United Rebar and Bumpy's or D&K.

[3]     Documents from the Missouri DOT identify Bumpy's as the relevant subcontractor on this project.  D&K's website, however, identifies D&K as the relevant subcontractor on this project.

by both federal and Illinois appropriations.   KCI Construction Company, based in Clayton, Missouri, serves as the general contractor on that project.  Work on that project began in 2016. As part of KCI's efforts to meet its goal to subcontract 18 percent of the work on that project to DBEs, D&K is ostensibly serving as a subcontractor on the project.  As described herein, in reality, D&K is operating as a front for Defendants United Ironworkers and/or Kim Rasnick to abuse the DBE program and fraudulently reap profits from that project.

56.     The DOT project to rehabilitate the William "Bill" Clay, Sr. Bridge, commonly known as the Poplar Street Bridge, also included work on a section of I-44. The prime contractor on the I-44 segment of the project is Concrete Strategies, LLC based in St. Louis, Missouri.  That segment of the project is funded by federal appropriations.  Work on that project began in 2016. As part of Concrete Strategies' efforts to meet its goal to subcontract 14 percent of the work on that project to DBEs, Bumpy's is ostensibly serving as a subcontractor on that project.  As described herein, in reality Bumpy's is operating as a front for Defendants United Ironworkers and/or Rasnick to abuse the DBE program and fraudulently reap profits from that project.

57.     Defendants have also perpetuated DBE fraud in connection with a DOT state road construction project involving a new bridge over Pike Creek where Missouri Route M runs through Carter County, Missouri.  The project includes appropriations of federal funds.  Defendant United Ironworkers serves as the general contractor on that project.  Work began on that project in 2015.  As part of United Ironworkers' requirement to make reasonable efforts to subcontract work on that project to DBEs, Bumpy's is ostensibly serving as a subcontractor on that project. As described herein, in reality Bumpy's is operating as a pass-through for Defendants United Ironworkers and/or Rasnick to abuse the DBE program and fraudulently reap profits from Pike Creek bridge project.

58.     Defendants have further perpetuated DBE fraud in connection with a DOT state road construction project on Route 32 in Dent County, Missouri.   The project includes appropriations of federal funds. KCI Construction Company, based in Clayton, Missouri, serves as the general contractor on that project, which began construction in 2016.  As part of KCI's efforts to meet its goal to subcontract 9 percent of the work on that project to DBEs, D&K is ostensibly serving as a subcontractor on that project.  As described herein, in reality, D&K is operating as a front for Defendants United Ironworkers and/or Kim Rasnick to abuse the DBE program and fraudulently reap profits from that project.

59.     Defendants have further perpetrated DBE fraud in connection with a DOT state road construction project on a bridge over the Bank Branch Creek on Route D in Camden County, Missouri.   The project includes appropriations of federal funds. KCI Construction Company, based in Clayton, Missouri, serves as the general contractor on that project, which began construction in 2017.  As part of KCI's efforts to meet its goal to subcontract 8 percent of the work on that project to DBEs, D&K is ostensibly serving as a subcontractor on that project.   As described herein, in reality, D&K is operating as a front for Defendants United Ironworkers and/or Kim Rasnick to abuse the DBE program and fraudulently reap profits from that project.

60.     Defendants have further perpetrated DBE fraud in connection with a DOT state road construction project on Route 79 in Pike County, Missouri.   The project includes appropriations of federal funds. L. F. Krupp KCI Construction, Inc., doing business as Krupp Construction, based in Ellisville, Missouri, serves as the general contractor on that project, which began construction in 2017.  As part of Krupp Construction's efforts to meet its goal to subcontract 7 percent of the work on that project to DBEs, D&K is ostensibly serving as a subcontractor on that project.  As described herein, in reality D&K is operating as a front for Defendants United

Ironworkers and/or Rasnick to abuse the DBE program and fraudulently reap profits from that project.

61.     Defendants have further perpetrated DBE fraud in connection with a DOT state road construction project on Route 50 in Osage County, Missouri.   The project includes appropriations of federal funds. Iron Mountain Trap Rock, based in Iron Mountain, Missouri, served as the general contractor on that project.  Work on that project began in 2012.  As part of Iron Mountain's efforts to meet its goal to subcontract 9 percent of the work on that project to DBEs, Bumpy's ostensibly served as a subcontractor on that project.  As described herein, in reality, Bumpy's operated as a front for Defendants United Ironworkers and/or Kim Rasnick to abuse the DBE program and fraudulently reap profits from that project.

62.     Defendants' violations of the DBE requirements constitute a material breach of the relevant DOT construction contracts and subcontracts.  The false statements made, or caused to be made, by the Defendants to obtain the relevant subcontracts and the false statements made regarding the performance of the subcontracts all violate the federal False Claims Act, 31 U.S.C. § 3729 *et seq*. and, as to projects involving Illinois appropriations, violate the State of Illinois' Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq*.

63.     Under the statutory "presumption of loss" doctrine in the Small Business Act, False Claims Act damages for abuse of the DBE program are measured by all amounts paid by the government to Bumpy's and D&K resulting from fraudulently obtained and/or fraudulently performed subcontracts on DOT projects.  *See, e.g., U.S. ex rel. Savage v. Washington Closure Hanford,* 2017 W.L. 3667709 (E.D. Wash. Aug. 24, 2017) (citing 15 U.S.C. § 632(w)(1)); *see also U. S. v. R.J. Zavoral & Sons, Inc.,* 2014 W.L. 5361991 *13-15 (D. Minn. Oct. 21, 2014); *U. S. ex rel. Longhi v. Lithium Power Technologies, Inc.,* 575 F.3d 458, 472-73 (9th Cir. 2009)

(government's damages were based on all amounts paid where government did not receive the benefit of paying for services performed by an eligible deserving small business); *cf. U.S. ex rel. Feldman v. Van Gorp,* 697 F.3d 78, 90-91 (2nd Cir. 2012) (where the government bargained for something qualitatively different from what it received, the government's measure of damages is the entire amount paid).

## COUNT ONE
## FALSE CLAIMS ACTION VIOLATION PURSUANT TO
## 31  U.S.C. § 3729(a)(1)(A)

64.     Relators restate, reallege, and incorporate by reference all allegations in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.     Defendants undertook the actions relating to the conduct alleged above when their officers, agents, and/or employees authorized its various officers, agents, and/or employees to take the actions relating to the conduct alleged above.

66.     By knowingly or recklessly presenting, or causing to be presented, claims for payment from the U.S. DOT or from downstream contractors as to payments from the U.S. DOT for payments pursuant to subcontracts on construction projects when Defendants knew, or absent recklessness should have known, that such claims were false, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval to the United States and/or the United States' contractors, grantees, or other recipients in violation of 31 U.S.C. § 3729(a)(1)(A).

67.     Defendants "knowingly" violated the False Claims Act, as that term is defined in 31 U.S.C. § 3729(b)(1).   As to each of the above allegations, Defendants acted with actual knowledge of falsity of the alleged information, in deliberate disregard of the truth or falsity of the alleged information, and/or in reckless disregard of the truth or falsity of the alleged

information.

68.    The United States, and/or relevant intermediaries as to government-funded construction projects, unaware of the false or fraudulent nature of these claims, paid such claims when the United States would not otherwise have paid had the United States and/or the relevant intermediaries known the truth.

69.    By knowingly violating 31 U.S.C. § 3729(a)(1)(A), Defendants damaged the United States and/or received, or caused the receipt, of reimbursements from government-funded construction projects to which Defendants Bumpy's and D&K were not entitled.

WHEREFORE, Relators Karl and Diana Jefferson respectfully request this Court award the following relief to the following parties and against Defendants:

To the United States:

(1)    Three times the amount of actual damages which the United States has sustained, or three times the amount of improperly received payments, as a result of the Defendants' conduct;

(2)    A civil penalty of no less than $5,500 and up to $11,000 for each false claim which Defendants presented or caused to be presented to the United States;

(3)    Prejudgment interest;

(4)    All costs incurred in bringing this action; and

(5)    Such further relief as this Court deems equitable and just.

To Relators:

(1)    The maximum amount allowed pursuant to 31 U.S.C. § 3730(d) and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Relators incurred in connection with this action;

(3)     An award of Relators' reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.


## COUNT TWO
## FALSE CLAIMS ACT VIOLATION PURSUANT TO
## 31  U.S.C. § 3729(a)(1)(B)

70.     Relators restate, reallege, and incorporate by reference all allegations in paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71.     Defendants undertook the actions relating to the conduct alleged above when their officers, agents, and/or employees authorized its various officers, members, agents, and/or employees to take the actions relating to the conduct alleged above.  By filing, or causing the relevant claims to be filed, for payments from the U.S. DOT or from downstream contractors as to payments from the U.S. DOT for payments pursuant to subcontracts on construction projects, Defendants knowingly made or caused to be made a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B).

72.     Defendants "knowingly" violated the False Claims Act, as that term is defined in 31 U.S.C. § 3729(b)(1).  As to each of the above allegations, Defendants acted with actual knowledge of the falsity of the alleged information, in deliberate disregard of the truth or falsity of the alleged information, and/or in reckless disregard of the truth or falsity of the alleged information.

73.     The United States Government and/or the relevant intermediaries, unaware of the false or fraudulent nature of these claims, paid such claims when they would not otherwise have paid had they known the truth.

74.     By knowingly violating 31 U.S.C. § 3729(a)(1)(B), Defendants damaged the

United States and/or fraudulently received, or caused the fraudulent receipt of, payments from government-funded construction projects.

WHEREFORE, Relators Karl and Diana Jefferson respectfully request this Court award the following relief to the following parties and against Defendants:

To the United States:

(1)     Three times the amount of actual damages which the United States has sustained, or three times the amount of improperly received payments, as a result of the Defendants' conduct;

(2)     A civil penalty of no less than $5,500 and up to $11,000 for each false claim which Defendants presented or caused to be presented to the United States;

(3)     Prejudgment interest;

(4)     All costs incurred in bringing this action; and

(6)     Such further relief as this Court deems equitable and just.

To Relators:

(1)     The maximum amount allowed pursuant to 31 U.S.C. § 3730(d) and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Relators incurred in connection with this action;

(3)     An award of Relators' reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT THREE
## ILLINOIS FALSE CLAIMS ACT
### 740 ILCS 175, *et seq.*

75.     Relators restate, reallege, and incorporate by reference all allegations in paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76.     This is a qui tam action brought by Relators on behalf of the State of Illinois to recover treble damages and civil penalties under the Illinois False Claims Act, 740 ILCS 175, *et seq*.

77.     740 ILCS 175/3(a) in pertinent part imposes liability on any person who:

> (1)     knowingly presents, or causes to be presented, to an officer, employee, or agent of the State of Illinois a false or fraudulent claim for payment or approval;

> (2)     knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim to an officer, employee, or agent of the State of Illinois; or

> (3)     conspires to commit a violation of (1) or (2) above.

78.     Defendants violated 740 ILCS 175/3(a) by knowingly causing false claims and false records to be made, used, and presented to an officer, employee, or agent of the State of Illinois, and by conspiring to knowingly cause false claims and false records to be made, used, and/or presented to the State of Illinois.

79.     The State of Illinois by and through the Illinois DOT – unaware of Defendants' misconduct – paid the claims submitted by Defendants Bumpy's and D&K and/or third parties in connection therewith.

80.     Compliance with the applicable DBE program was an implied, and upon

information and belief, an express condition for payment of claims submitted by Defendants Bumpy's and D&K to the State of Illinois.

81.     Had the State of Illinois known that Defendants Bumpy's and D&K made false representations and false records in connection with the above conduct, the State of Illinois would not have paid the claims submitted by Defendants Bumpy's and D&K and/or third parties in connection with that conduct.

82.     The State of Illinois has been damaged as a result of Defendants' violations of 740 ILCS 175/3(a).

83.     Relators are private citizens with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to 740 ILCS 175/3(b) on behalf of the State of Illinois.

84.     Relators request this Court to accept pendant jurisdiction of this related State claim as it is predicated upon the same nucleus of operative facts as the federal claims, and merely asserts separate damage to the State of Illinois in the operation of its DOT procurement of construction projects in conformity with its DBE program.

WHEREFORE, Relators respectfully request this Court award the following relief to the following parties and against Defendants:

To the State of Illinois:

(1)     Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendants' conduct;

(2)     A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Illinois;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

(5)     Such further relief as this Court deems equitable and just.

To Relators:

(1)     The maximum amount allowed pursuant to 740 ILCS 175/4(d) and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Relators incurred in connection with this action;

(2)     An award of Relators' reasonable attorneys' fees and costs; and

(3)     Such further relief as this Court deems equitable and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of Federal Rules of Civil Procedure, the Relators hereby demand a trial by jury.

[Remainder of Page Deliberately Left Blank]

Respectfully submitted,

**DOWNEY LAW GROUP, LLC**

/s/ *Michael P. Downey*
Michael P. Downey, Ill. Bar No. 6257380
49 N. Gore Avenue, Suite 2
St. Louis, MO 63119
(314) 961-6644
mdowney@downeylawgroup.com


**BRADY & ASSOCIATES**
Mark A. Kistler, MO Bar No. 48442
Michael F. Brady, MO Bar No. 47521
10985 Cody Street, Suite 135
Overland Park, KS 66210
(913) 696-0925
(913) 696-0468 (*Facsimile)*
mkistler@mbradylaw.com
brady@mbradylaw.com

ATTORNEYS FOR RELATORS
KARL JEFFERSON and
DIANA JEFFERSON